UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

K.D., by and through KERRY KELLY
DUNCAN, individually and as Mother of K.D.,
a disabled child,

                            Plaintiffs,

       - against -

WHITE PLAINS SCHOOL DISTRICT; MRS.
AGNIESZKA BLAZKIEWICZ, Teacher; TED
O'DONNELL, Social Worker; and JOHN DOES 1-10
(their true names and identities presently unknown),
acting in both their official and unofficial capacities as
Representatives of WHITE PLAINS SCHOOL
DISTRICT,

                            Defendants.

**OPINION AND ORDER**

11 Civ. 6756 (ER)

<u>Appearances:</u>

Patsy Bonanno
Pat Bonanno & Associates, P.C.
White Plains, NY
*Attorney for Plaintiffs*

Lewis R. Silverman
Adam Christopher Guzik
Rutherford & Christie, LLP
New York, NY
*Attorneys for Defendants*

<u>Ramos, D.J.:</u>

       Defendants White Plains School District ("WPSD"), Agnieszka Blazkiewicz

("Blazkiewicz"), Ted O'Donnell ("O'Donnell"), and John Does 1-10 (the "WPSD Does")  (the

"Individual Defendants" bring this Motion to Dismiss Plaintiffs' Complaint in its entirety

pursuant to Fed. R. Civ. P. 12(b)(6).  Doc. 8.  For the reasons set forth below, Defendants'

Motion is GRANTED in full.

## I. Background

Plaintiffs K.D. and Kerry Kelly Duncan ("Duncan"), individually and as the mother of K.D., who is described in the caption as a "disabled child," commenced this action by filing a Summons with Notice in the Supreme Court of the State of New York, County of Westchester, on August 8, 2011. Compl. Ex. A.[1] Defendants removed the action to this Court on September 27, 2011, Doc. 1, and Plaintiffs filed the operative complaint on November 3, 2011. Doc. 4.

The Complaint alleges eight causes of action: (1) conspiracy to violate Plaintiffs' Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, against Defendants collectively ("Count I"), Compl. ¶¶ 43-47; (2) supervisory liability and failure to intercede to prevent the violation of K.D.'s and Duncan's Fourth and Fourteenth Amendment rights,[2] respectively, pursuant to 42 U.S.C. § 1983, against the WPSD and the WPSD Does ("Count II"), id. ¶¶ 48-51; (3) deprivation of Plaintiffs' Fourteenth Amendment right to Due Process, pursuant to 42 U.S.C. §1983, against all Defendants ("Count III"), id. ¶¶ 52-55; (4) conspiracy to interfere with Plaintiffs' civil rights, pursuant to 42 U.S.C. § 1985, against the Individual Defendants ("Count IV"), id. ¶¶ 56-58; (5) gross negligence and intentional and negligent infliction of emotional

---

[1] In ruling on a motion to dismiss pursuant to Rule 12(b)(6) a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein. *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007). The Court, however, may consider documents that are attached to the complaint or incorporated by reference, provided there is no dispute regarding authenticity, accuracy or relevance. *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). Plaintiffs attached three exhibits to the Complaint: (1) the initial pleadings filed in state court, including an affidavit of Duncan and an affirmation of Plaintiffs' attorney in support of an Order to Show Cause seeking leave to file the Notice of Claim nunc pro tunc pursuant to General Municipal Law § 50(e)(5) ("Ex. A"); (2) the New York State Office of Children & Family Services (the "OCFS") Summary Guide for Mandated Reporters in New York State ("Ex. B"); and (3) the Individualized Education Program for K.D., dated September 4, 2010 ("Ex. C"). As the exhibits are not separately paginated, the Court has cited to the relevant portions of the exhibits by reference to the exhibit letter and to the continuous ECF pagination for the Complaint.

[2] The Court refers throughout this opinion to K.D.'s Fourth Amendment rights, which are applicable to Defendants, who are state rather than federal actors, through the Fourteenth Amendment Due Process Clause. *See Kia P. v. McIntyre*, 235 F.3d 749, 761 (2d Cir. 2000).

distress against all Defendants ("Count V"), *id.* ¶¶ 59-62; (6) respondeat superior against WPSD ("Count VI"), *id.* ¶¶ 63-66; (7) prima facie tort against the WPSD Does ("Count VII"), *id.* ¶¶ 67-69; and (8) negligent hiring and supervision against the WPSD ("Count VIII").  *Id.* ¶¶ 70-83. Additionally, in connection with the instant motion, the parties have offered arguments relating to violations of the Fourth and Fourteenth Amendments that are not otherwise designated as independent causes of action in the Complaint.

### A.  Factual Background

The following facts are based on the allegations in the Complaint, which the Court accepts as true for purposes of this motion.  *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

At all times relevant to the allegations in the Complaint, Plaintiff K.D. was a nineteen-year-old student at White Plains High School (the "High School").  Compl. Ex. A, at 20.  K.D. is a developmentally disabled individual and has been classified as Autistic since elementary school.  Compl. Ex. C, at 35; Pls.' Mem. Law Opp. Defs.' Mot. Dismiss ("Pls.' Mem.") 9, Doc. 11.  Duncan is K.D.'s mother, but she was not K.D.'s legal guardian at the time of the incidents alleged in the Complaint.  *See* Pls.' Mem. 10; Compl. Ex. C, at 35.

The incident giving rise to Plaintiffs' claims occurred on February 28, 2011, beginning at approximately 2:05 pm, while K.D. was attending class with Blazkiewicz.  Compl. ¶¶ 27-29, Ex. A, at 20, 25.  At some point during class, Blazkiewicz asked K.D. why there was a mark on K.D.'s face.  Compl. Ex. A, at 25.  K.D. told Blazkiewicz that her brother had thrown something at her the day before, resulting in the injury.  *Id.*  Blazkiewicz immediately sent K.D. to speak with O'Donnell, the school social worker, for the purpose of reporting the alleged assault to him. *Id.* at 20, 25.  O'Donnell and/or one of the WPSD Does then notified the White Plains Police

Department ("WPPD") of the allegation, and an officer from the WPPD responded to the High School and took a statement from K.D.  *Id.*

In her statement to the WPPD, K.D. accused her brother, Byron Duncan, of assault.  *Id.* at 25.  Byron Duncan was subsequently summoned to the WPPD to provide his statement.  *Id.*  At some point thereafter, he was arrested and charged with Assault in the Third Degree.  *Id.*  The charges against Byron Duncan were ultimately dismissed.  *Id.*  Duncan learned of the interrogation of K.D. from her son, after he was summoned to the WPPD.  *Id.* at 20.

Plaintiffs allege that K.D. was told by unidentified WPSD personnel that she had to speak with the police officer, that O'Donnell permitted the officer "unrestricted access" to K.D., and that K.D. was not provided with an opportunity to speak with her mother or an attorney prior to the alleged interrogation by the WPPD officer, which took place in a private office at the school.  *Id.* at 20, 26.  Plaintiffs further allege that Defendants never notified Duncan of the interrogation, and that it was conducted without her consent.  *Id.* at 20, 25.

As a result of the foregoing, Plaintiffs allege that O'Donnell conspired with the WPSD Does to violate K.D.'s Fourth Amendment rights by seizing K.D. and directing the WPPD to interrogate her without a warrant, probable cause or parental consent.  *Id.* ¶¶ 27, 29.  Plaintiffs further allege that O'Donnell conspired with the WPSD Does to violate Duncan's familial rights under the Due Process Clause of the Fourteenth Amendment by questioning K.D. without Duncan's consent.  *Id.* ¶ 28.  Plaintiffs claim that O'Donnell knew or should have known that allowing K.D. to be questioned by the WPPD was a violation of the mandated reporting protocols set forth by the OCFS regarding instances of suspected child abuse and/or maltreatment.  *Id.* ¶¶ 30, 39, 45, Ex. A, at 20, Ex. B.

## II. Rule 12(b)(6) Motions to Dismiss

### A.  General Legal Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc.,* 624 F.3d at 108.  However, the court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 678-79.  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

## III. Section 1983 Claims against the WPSD

Defendants argue that Plaintiffs' claims against the WPSD must be dismissed because, even assuming arguendo that Plaintiffs have alleged a violation of their constitutional rights, they have not alleged the existence of any municipal custom or policy that was the moving force

behind the purported constitutional violations.  Defs.' Mem. Law Supp. Mot. Dismiss ("Defs.'
Mem.") 18-19, Doc. 9.  In their opposition papers, Plaintiffs concede that they have not
identified, and cannot currently identify, a WPSD custom or policy that is responsible for their
alleged constitutional injuries.  Pls.' Mem. 20-21.  Plaintiffs argue that Defendants' motion to
dismiss the claims against the WPSD should be denied to permit them to conduct discovery for
the purpose of identifying the WPSD policy for the questioning of students by police officers in
connection with child abuse investigations.  *Id.*

### A.  Municipal Liability under Section 1983

A municipality cannot be held liable under § 1983 on a theory of *respondeat superior*.
*Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  A section 1983 claim can
only be brought against a municipality if the action that is alleged to be unconstitutional was the
result of an official policy or custom.  *Id.* at 691, 694-95.  Thus, a plaintiff must allege that such
a municipal policy or custom is responsible for his injury.  *Bd. of Cnty. Comm'rs of Bryan Cnty.
v. Brown,* 520 U.S. 397, 403-04 (1997); *see also Connick v. Thompson*, --- U.S. ----, 131 S. Ct.
1350, 1359 (2011) ("A municipality or other local government may be liable under [§ 1983] if
the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to
be subjected' to such deprivation." (quoting *Monell*, 436 U.S. at 692)).

The Second Circuit has established a two prong test for § 1983 claims brought against a
municipality.  "First, a plaintiff must 'prove the existence of a municipal policy or custom in
order to show that the municipality took some action that caused his injuries beyond merely
employing the misbehaving officer.'"  *Johnson v. City of New York*, No. 06 Civ. 9426 (GBD),
2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768
F.2d 40, 44 (2d Cir. 1985)).  Second, the plaintiff must establish a causal connection between the

policy or custom and the alleged deprivation of his constitutional rights.  *Id.* (citing *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

To satisfy the first prong of the test on a motion to dismiss, a plaintiff must allege the existence of:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal citations and quotation marks omitted); *see also Brandon*, 705 F. Supp. 2d at 276-77 (quoting *Moray* and updating citations to cases).

Although a plaintiff is not required to identify an express rule or regulation to state a *Monell* claim, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. N.Y. City Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)) (internal quotation marks omitted); *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988) (plurality opinion) (explaining that only municipal officials who have "final policymaking authority" concerning the particular activities giving rise to a plaintiff's claims "may by their actions subject the government to § 1983 liability").

## B.  Discussion

Here, Plaintiffs explicitly concede that they have not identified any municipal policy concerning the particular activities giving rise to their constitutional claims, Pls.' Mem. 20-21,

and the Complaint does not allege any facts to satisfy *either* prong of the Second Circuit's test for § 1983 claims against municipalities.  *See, e.g.*, *Johnson*, 2011 WL 666161, at *4 ("Plaintiff has pled no facts to demonstrate that some unidentified policy or custom bears a causal link to the alleged constitutional violations—let alone that the policy or custom was the 'moving force' behind the violations." (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 n.8 (1985))).  While Plaintiffs assert a cause of action against the WPSD for "supervisory liability and failure to intercede," Compl. ¶¶ 48-51, there are no facts pointing to a lack of training or supervision by the WPSD that amount to a deliberate indifference to the rights of either WPSD students or the parents of WPSD student.  *See Jenkins v. City of New York*, 478 F.3d 76, 94-95 (2d Cir. 2007) (explaining that a municipality's failure to train or supervise only constitutes deliberate indifference where a policymaker knows "to a moral certainty" that employees will confront a given situation that presents them with a difficult choice that would be made less difficult by training or supervision, or that has been mishandled in the past, and the mishandling of the situation will frequently cause the deprivation of a constitutional right (quoting *Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir. 1992))).  Plaintiffs failure to allege a municipal policy or custom that caused the deprivations is fatal to their §1983 claims against the WPSD.  Therefore, Defendants' Motion to Dismiss the § 1983 claims against the WPSD is GRANTED.

## IV. Supervisory Liability and Failure to Intercede

Count II asserts a cause of action against the WPSD and the WPSD Does pursuant to § 1983 for "supervisory liability"[3] and failure to intercede.  Compl. ¶¶ 48-51.  The cause of action against the WPSD set forth in Count II has already been dismissed because of the failure to

---

[3] The Supreme Court has explained that "[i]n a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer," because "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677.

adequately allege a *Monell* claim.  *See supra* Section III.  Therefore, Count II remains only as asserted against the WPSD Does in their individual capacities.[4]

Plaintiffs assert that the WPSD Does had opportunities to prevent the unlawful seizure of K.D. and the unlawful deprivation of Duncan's familial rights, but "due to intentional and deliberate indifference, declined or refused to do so."  Compl. ¶¶ 34-35, 49-50.  The Complaint does not contain any additional allegations relating to the alleged failure to prevent the alleged deprivation of Duncan's familial rights or the violation of K.D.'s Fourth Amendment rights.

Defendants argue that Plaintiffs' claim against the WPSD Does for failure to intercede must be dismissed, because the WPSD Does are not identified anywhere in the pleadings, and there are no allegations demonstrating that any WPSD Does participated in the alleged constitutional violations, had notice of any constitutional violations and failed to remedy the wrongful conduct, were grossly negligent in supervising subordinates who caused constitutional violations, or created policies or customs resulting in constitutional violations.  Defs.' Mem. 20. In opposition, Plaintiffs assert that their failure-to-intercede § 1983 claim should survive Defendants' motion to dismiss, because "[s]omeone within WPSD holds the authority to have prevented the constitutional violations of plaintiff K.D.," and Plaintiffs should be permitted to conduct discovery to identify that individual.[5]

---

[4] Plaintiffs' failure to adequately allege a basis for municipal liability requires dismissal of the claims against the Individual Defendants in their official capacities, because such claims are duplicative of the claims against the WPSD.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (explaining that official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell*, 436 U.S. at 690 n.55)).

[5] Plaintiffs also suggest that O'Donnell's supervisor, whose identity is unknown, is the supervisory official who should be held responsible for failing to intercede to prevent the constitutional violations, Pls.' Mem. 21; however, there are no allegations anywhere in the pleadings concerning O'Donnell's supervisor, and no basis for concluding that O'Donnell's supervisor would be liable for the allegedly wrongful conduct of O'Donnell based on the allegations set forth in the Complaint.

### A. Legal Standard

It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.  *Costello v. City of Burlington*, 632 F.3d 41, 48-49 (2d Cir. 2011) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  In other words, a supervisory official cannot be held liable solely on the basis of the acts or omissions of his subordinates; the supervisor must be personally involved in the alleged deprivation, and there must be "an affirmative causal link between the supervisor's actions (or inactions) and the injury."  *Turkmen v. Ashcroft*, No. 02 Civ. 2307 (JG), --- F. Supp. 2d ----, 2013 WL 153158, at *10-12 (E.D.N.Y. Jan. 15, 2013); *see also Wright*, 21 F.3d at 501 (explaining that a defendant cannot be held personally responsible merely because he or she is in a high position of authority).

"A [§ 1983] claim for failure to act is cognizable only in the presence of a corresponding duty to have acted."  *Scott v. Fischer*, 616 F.3d 100, 109 (2d Cir. 2010) (citing *Benzman v. Whitman*, 523 F.3d 119, 132 (2d Cir. 2008)).  In addition, a plaintiff must show that the official's omissions were a "substantial factor" resulting in the deprivation of a constitutional right, and that the official "displayed a mental state of deliberate indifference with respect to those rights." *Scaggs v. N.Y. Dep't of Educ.*, No. 06 Civ. 0799 (JFB) (VVP), 2007 WL 1456221, at *18 (E.D.N.Y. May 16, 2007) (quoting *P.C. v. McLaughlin*, 913 F.2d 1033, 1044 (2d Cir. 1990)) (citations and internal quotation marks omitted); *see also Betancourt v. Slavin*, 676 F. Supp. 2d 71, 78 (D. Conn. 2009) ("'In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.'" (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994))).  Thus, an allegation that a supervisory official merely failed to exercise his or her authority over subordinates, without more, is insufficient to hold a defendant

personally liable under § 1983 on a failure-to-intercede theory, *Scaggs*, 2007 WL 1456221, at

*18, or on a theory of supervisory liability.  *See Rizzo v. Goode*, 423 U.S. 362, 371, 376 (1976)

(explaining that supervisory officials do not have a general duty to prevent future misconduct);

*see also Vogelfang v. Capra*, No. 19 Civ. 3827 (PAE), --- F. Supp. 2d ----, 2012 WL 832440, at

*6 (S.D.N.Y. Mar. 13, 2012) ("[T]he mere fact that a defendant possesses supervisory authority

is insufficient to demonstrate liability for failure to supervise under § 1983." (quoting *Styles v.

Goord*, 431 F. App'x 31, 33 (2d Cir. 2011) (summary order))).

### B.  Discussion

The *only* factual allegation relating to the conduct of the WPSD Does is the assertion that

"O'Donnell and/or John Doe notified the White Plains Police Department [] of the incident"

reported by K.D.  Compl. Ex. A, at 25.  There are no factual allegations demonstrating that any

WPSD Doe was present during the alleged seizure and interrogation of K.D. or that any WPSD

Doe had an opportunity to intercede on behalf of Plaintiffs to prevent the interrogation from

occurring without parental notice or consent.  Moreover, Plaintiffs do not allege that any of the

WPSD Does had an affirmative legal duty to intercede to prevent the allegedly unconstitutional

"seizure and interrogation."  Plaintiffs have plainly failed to allege a cognizable § 1983 claim

against any of the WPSD Does in their individual capacities based on a failure to intercede.

*Betancourt*, 676 F. Supp. 2d at 78; *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir.

2001) (dismissing failure to intercede claim because plaintiff had not shown that defendant

observed or had reason to know that excessive force would be used).

There are also no allegations indicating a grossly negligent failure to supervise the

individuals who allegedly committed the wrongful acts, or a deliberate indifference to the rights

of Plaintiffs based on the failure to act on information that unconstitutional acts were occurring.

*See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[6]  The Complaint does not even identify

any of the WPSD Does *as supervisory officials.  See* Compl. ¶¶ 10-11.  Thus, Plaintiffs'

conclusory, blanket allegations of supervisory liability are also plainly insufficient to meet

*Iqbal*'s plausibility standard.  *See, e.g.*, *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009)

(affirming dismissal of § 1983 failure-to-supervise claim because the complaint "lacks any hint

that [the supervisory official] acted with deliberate indifference to the possibility that his

subordinates would violate [plaintiff's] constitutional rights." (citing *Poe v. Leonard*, 282 F.3d

123, 140 (2d Cir. 2002))).  Accordingly, Defendants' Motion to Dismiss Count II of the

Complaint against the WPSD Does is GRANTED.

## V. Conspiracy Claims under Section 1983 and 1985

### A.  Plaintiffs' Claims

Count I of the Complaint asserts a cause of action for conspiracy under § 1983 against

Defendants generally for conspiring to violate K.D.'s Fourth Amendment right to be free from an

unreasonable seizure and Duncan's Fourteenth Amendment "familial rights."  Compl. ¶¶ 44-46.

Count IV asserts a cause of action for a "conspiracy to interfere with civil rights" pursuant to 42

U.S.C. § 1985 against the Individual Defendants.  *Id.* ¶ 57.  Plaintiffs assert that "[t]he individual

Defendants, under color of law, conspired with each other to undertake a course of conduct to

injure, oppress, threaten and intimidate Plaintiffs in the free exercise and enjoyment of their

---

[6] While the *Iqbal* decision calls into question several of the categories of supervisory liability enumerated by the Second Circuit in *Colon*, the Circuit has thus far declined to resolve the conflicting interpretations of the surviving *Colon* grounds among the district courts.  *Reynolds v. Barrett*, 685 F.3d 193, 206 n.14 (2d Cir. 2012) (recognizing but declining to resolve the conflict about the continuing vitality of the supervisory liability test set forth in *Colon*). The uncertainty surrounding the surviving grounds for supervisory liability is not material to the resolution of this motion, however, because the Complaint is devoid of factual allegations to support a § 1983 supervisory liability claim against any of the WPSD Does on any of the grounds enunciated by the Second Circuit in *Colon*.  *See Grenier v. City of West Haven*, No. 11 Civ. 0808 (JBA), 2012 WL 4092587, at *5 (D. Conn. Sept. 17, 2012).

rights and privileges and equal protection of the law secured to them by the Constitution . . . ."
*Id.*

Defendants argue that Plaintiffs' conspiracy claims must be dismissed because Plaintiffs have not adequately alleged any of the elements of a conspiracy under § 1983 or § 1985(3), and because any alleged conspiracy among Defendants in this case is barred by the intracorporate conspiracy doctrine.  Defs.' Mem. 11-14.  Because the two causes of actions have similar elements, they will be discussed together.

**B.  Legal Standard**

In order to state a § 1983 conspiracy claim, a plaintiff must allege facts showing:  "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (same).  To state a valid cause of action under § 1985(3), Plaintiffs must allege:  "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." [7]  *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).

---

[7] Section 1985(3) provides, in relevant part:

> If two or more persons in any State or Territory conspire . . .  for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived

To withstand a motion to dismiss a §1983 or §1985(3) conspiracy claim, a plaintiff "must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end," augmented by "some details of time and place and the alleged effects of the conspiracy." *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) (quoting *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999)) (internal quotation marks omitted); *see also Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) ("A plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, but the pleadings must present facts tending to show agreement and concerted action." (internal citation and quotation marks omitted)).  In addition, the plaintiff "must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *Thomas*, 165 F.3d at 147.  Finally, the Complaint must adequately allege a violation of the right or rights that defendants are alleged to have conspired to violate.  *Romer*, 119 F. Supp. 2d at 363 ("A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right.").  In order to plead a cognizable civil rights conspiracy claim under § 1985(3), a plaintiff is also required to allege that she was a member of a protected class, and that the conspirators acted with a class-based, "invidiously discriminatory motivation." *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971); *see also Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006) (same).

---

may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).  Plaintiffs do not indicate, either in the Complaint or in their opposition papers, that they are asserting a conspiracy claim pursuant to subsection 3 of § 1985; however, it is the only subsection of the statute that is conceivably applicable to the facts of this case.

### C. Discussion

Notwithstanding Plaintiffs' amorphous use of "Defendants" and "individual Defendants" in Counts I and IV respectively, the Complaint only contains allegations relating to a conspiracy between O'Donnell and the WPSD Does. Compl. ¶¶ 27-29, 32. As an initial matter, therefore, Defendants' motion to dismiss Counts I and IV against Blazkiewicz must be GRANTED.

With respect to O'Donnell and the WPSD Does, the Complaint does not set forth *any* specific facts that indicate *any* sort of meeting of the minds between O'Donnell and the WPSD Does, let alone an agreement to violate K.D.'s and Duncan's Fourth and Fourteenth Amendment rights, respectively. Furthermore, with respect to the conspiracy claim under § 1985(3), there are no allegations that any defendants acted with an invidiously discriminatory animus anywhere in the pleadings.[8]

"It is well settled that claims of conspiracy 'containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (quoting *Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir. 1993)), *reh'g denied,* 645 F.3d 519 (2d Cir. 2011); *see also Gallop*, 642 F.3d at 369 (affirming district court's dismissal of conspiracy claim as baseless where plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators."). Plaintiffs' conspiracy claims thus fail because the Complaint is devoid of any specific facts relating to the purported conspiracies. *Ciambriello*, 292 F. 3d at 325 (affirming dismissal of § 1983 conspiracy claim under Rule 12(b)(6) because allegations were "strictly

---

[8] Plaintiffs assert for the first time in their opposition papers that K.D. is a disabled individual who was discriminated against on the basis of her developmental disability, Pls.' Mem. 19; however, there are no allegations in the pleadings to support this argument. Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss. *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals,* 812 F. Supp. 2d 357, 363 n.9 (S.D.N.Y. 2011); *Scott v. City of New York Dep't of Corr.*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009), *aff'd*, 445 F. App'x 389 (2d Cir. 2011).

conclusory," where plaintiff had not provided "any details of time and place, and had "fail[ed] to specify in detail the factual basis" of the claim (internal quotation marks and citations omitted)); *see also Temple of the Lost Sheep Inc. v. Abrams,* 930 F.2d 178, 185 (2d Cir. 1991) (affirming dismissal of section 1985(3) claims under Rule 12(b)(6) "since they were couched in terms of conclusory allegations and failed to demonstrate some . . . invidiously discriminatory animus behind the conspirators' actions." (internal quotation marks and citation omitted)).

**Intracorporate Conspiracy Doctrine**

Plaintiffs' conspiracy claims also fail because the alleged conspirators are members of the same public entity, i.e., the WPSD.  Under the intracorporate conspiracy doctrine, employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring together.  *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978) ("[T]here is no conspiracy [under section 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own  . . . officers[] and employees . . . ."); *see also Kogut v. Cnty. of Nassau*, Nos. 06 Civ. 6696 (JS) (WDW), 06 Civ. 6720 (JS) (WDW), 2009 WL 2413648, at *12-13 (E.D.N.Y. Aug. 3, 2009) (dismissing § 1983 conspiracy claim under the intracorporate conspiracy doctrine because plaintiff asserted a conspiracy only between actors of the same municipal entity).

While, "'[a]n exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity,'" *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 360 (E.D.N.Y. 1999) (citation omitted), the Complaint does not allege that O'Donnell or any of the WPSD Does were acting solely in their personal interests.  Indeed, the Complaint alleges that O'Donnell and the WPSD Does were "on duty" and acting "within the scope of their employment" at the time of the

16

alleged conspiracies.  Compl. ¶ 41.  Therefore, Plaintiffs' conspiracy claims are also subject to dismissal because of Plaintiffs' failure to allege a conspiracy between two or more independent state actors or legal entities.  *See Farbstein v. Hicksville Pub. Library*, 254 F. App'x 50, 51 (2d Cir. 2007) (affirming district court's conclusion that alleged conspiracy between two or more library employees failed because of the  "legal impossibility of pleading conspiracy by exclusive reference to actions of employees of a single corporation." (citing *Herrmann*, 576 F.2d at 459)).

## VI. Fourth Amendment Claim[9] [10]

### A. K.D.'s In-School Interview

The Complaint alleges that Defendants violated K.D.'s Fourth Amendment rights by "seizing and interrogating her in a private office at White Plains High School without a warrant, probable cause, or parental consent."[11]  Compl. ¶¶ 27, 29, 32, 45.  In support of their motion to

---

[9] While there is no independent cause of action for a Fourth Amendment violation asserted in the Complaint, there are factual allegations relating to an alleged violation of K.D.'s Fourth Amendment rights, and the parties briefed the legal viability of K.D.'s alleged Fourth Amendment violation in their motion papers.  Therefore, the Court will also consider the legal sufficiency of the allegations concerning K.D.'s implied Fourth Amendment claim.

[10] With the exception of the procedural due process claim based on the failure to comply with the OCFS mandatory reporting protocol, the parties agree that K.D. should be treated as if she were a minor, and thus that case law governing Fourth and Fourteenth Amendment claims brought by minor children and their parents should apply to Plaintiffs' claims.  Defs.' Mem. 3-4; Pls.' Mem. 5-6.  The Court does not agree.  At the time of the alleged seizure and interrogation, K.D. was nineteen years old and thus *not* a minor under New York law, N.Y. C.P.L.R. 105(j); N.Y. Dom. Rel. Law § 2; N.Y. Gen. Oblig. § 1-202; N.Y. Soc. Servs. Law §§ 2(31), 371(1), and—notwithstanding her developmental disability—Duncan was not K.D.'s legal guardian, Pls.' Mem. 10, and Duncan was not otherwise legally responsible for K.D.  *See* 66 N.Y. JUR. 2D *Infants and Other Persons Under Legal Disability* §§ 1-2, 4 (2012).  Treating K.D. as a minor is especially inappropriate here, because Plaintiffs' due process claims are based on the familial relationship between K.D. and Duncan, which is factually and legally different from the relationship between a parent and a minor child.  *See infra* note 15.  Therefore, while the Court has analyzed Plaintiffs' claims under the legal standards applied to such claims in cases involving minor children—because the parties have not offered any other arguments or legal authorities in their motion papers—the Court has determined the viability of Plaintiffs' claims in light of the undisputed fact that K.D. was nineteen years old and legally independent under New York law.  *See Nash v. Yablon-Nash*, 935 N.Y.S. 2d 134, 135 (2d Dep't 2011).

[11] While both parties refer to K.D.'s Fourth Amendment claim as asserted against Defendants collectively, the only relevant conduct attributable to Blazkiewicz is the decision to send K.D. to speak with O'Donnell.  Compl. Ex. A, at 20, 25.  Further, Blazkiewicz is not included in the factual allegations relating to the alleged conspiracy to violate K.D.'s Fourth Amendment rights. *See id.* ¶¶ 27, 32.  Therefore, K.D.'s Fourth Amendment claim against

dismiss, Defendants argue that K.D.'s Fourth Amendment rights were not violated because the interview of K.D, including the decision to call the WPPD to take her statement, was reasonable in the circumstances.  Defs.' Mem. 9-11.  Defendants contend the Second Circuit has never held that "an interview of a possible child abuse victim at school, without the removal of the child from the parents' custody, constitutes a violation of the Fourth Amendment."  *Id.* at 9.  Defendants also assert a qualified immunity defense on behalf of the Individual Defendants on the ground that "the Second Circuit has not clearly determined what standard should apply when determining the reasonableness of a search or seizure in the context of abuse investigations in public schools."  *Id.* at 9, 16-17.

## B.  Qualified Immunity

Since Defendants have asserted a qualified immunity defense based on the absence of a clearly established right, the Court begins, not with an analysis of whether K.D.'s Fourth Amendment rights were violated, but instead by considering whether a reasonable school official in the position of O'Donnell and the WPSD Does would have believed that his conduct would violate K.D's Fourth Amendment rights under the Second Circuit and Supreme Court law that existed at the time of the alleged seizure.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling *Saucier v. Katz,* 533 U.S. 194 (2001) and explaining that judges are no longer required to begin by deciding whether a constitutional right was violated but are instead "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first . . . .").

---

Blazkiewicz fails on the merits, because Blazkiewicz is not alleged to have been personally involved in the conduct that allegedly violated K.D.'s Fourth Amendment rights.  *Costello*, 632 F.3d at 48-49.  For clarity, the Court has continued to refer to the qualified immunity defense asserted on behalf of the "Individual Defendants" collectively.

Qualified immunity is "'an immunity from suit rather than a mere defense to liability.'" *Fabrikant v. French*, 691 F.3d 193, 212 (2d Cir. 2012) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Accordingly, the Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).  The Court may grant a motion to dismiss on qualified immunity grounds where the defense is based on facts that appear on the face of the complaint.  *Looney v. Black*, No. 11-3486, 2012 WL 6633949, at *8 (2d Cir. Dec. 21, 2012) (citing *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)).

### 1.  Legal Standard

 "Qualified immunity was created to shield government officials from civil liability for the performance of discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Atwater v. City of Lago Vista*, 532 U.S. 318, 367 (2001) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "'To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Fabrikant*, 691 F.3d at 212 (quoting *Reichle v. Howards,* --- U.S. ----, 132 S.Ct. 2088, 2093 (2012)).  In determining if a particular right was clearly established, the Court "looks to whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Doninger v. Niehoff,* 642 F.3d 334, 345 (2d Cir. 2011) (citing *Young v. Cnty. of Fulton,* 160 F.3d 899, 903 (2d Cir. 1998)).  "'The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in [the] defendant's position should know about the constitutionality of the conduct.'" *Phillips v. Cnty. of Orange*, No. 10

Civ. 0239 (KMK), --- F. Supp. 2d ----, 2012 WL 4108113, at *27 (S.D.N.Y. Sept. 11, 2012)

(quoting *Young*, 160 F.3d at 903).

The Supreme Court has instructed that "when a qualified immunity defense is asserted, a

court should consider the specific scope and nature of a defendant's qualified immunity claim . .

. . [as] a determination of whether the right at issue was 'clearly established' must be undertaken

'in light of the specific context of the case, not as a broad general proposition.'" *Id.* at *28

(citing *Saucier*, 533 U.S. at 201).  In other words, the Court must ask whether the right at issue

was established "in a particularized sense so that the contours of the right [were] clear to a

reasonable official." *Reichle,* 132 S. Ct. at 2094 (internal quotation marks omitted).  Although a

case directly on point is not required to demonstrate that a right is clearly established, "'existing

precedent must have placed the statutory or constitutional question beyond debate.'" *Fabrikant*,

691 F.3d at 213 (quoting *Ashcroft v. al-Kidd,* --- U.S. ----, 131 S.Ct. 2074, 2083 (2011)); *see also*

*Moore v. Vega,* 371 F.3d 110, 114 (2d Cir. 2004) ("Only Supreme Court and Second Circuit

precedent existing at the time of the alleged violation is relevant in deciding whether a right is

clearly established." (citing *Townes v. City of New York*, 176 F.3d 138, 144 (2d Cir. 1999))).

### 2.  Discussion

Defendants claim that the Individual Defendants are entitled to qualified immunity

because, where there is no physical removal of a child from a parent's custody, there is no

clearly established right that requires school officials to obtain a warrant, court order, or parental

consent prior to conducting an in-school interview of a student in the context of an abuse

investigation.  Defs.' Mem. 16-17.

The Second Circuit has recognized that "the Fourth Amendment applies in the context of

the seizure of a child by a government-agency official during a civil child-abuse or maltreatment

investigation." *Kia P.*, 235 F.3d at 762 (citing *Tenenbaum v. Williams*, 193 F.3d 581, 602 (2d

Cir. 1999)).  However, the Circuit has thus far declined to decide what standard applies to

determine whether a seizure is "reasonable" under the Fourth Amendment in cases where the

State seizes a child in the context of a child abuse investigation.  *Southerland v. City of New

York*, 680 F.3d 127, 157-59 (2d Cir.), *reh'g in banc denied*, 681 F.3d 122 (2d Cir. 2012), *cert.

denied*, No. 12-215, --- S. Ct. ----, 2013 WL 215683 (Jan. 22, 2013); *see also, e.g.*, *Kia P.*, 235

F.3d at 762 (declining to address whether the seizure of a child "requires probable cause, or

whether it is subject to a 'less stringent reasonableness requirement' due to the 'special needs' of

child protection agencies, or whether [it] must be justified by 'exigent circumstances,'" (quoting

*Tenenbaum*, 193 F.3d at 603-05)).  "This inquiry is further complicated by the fact that the

Second Circuit cases addressing the reasonableness of a child's seizure have all involved

situations where the child was physically removed either from the school or from the parents'

custody, and thus have not addressed what standard should apply where the seizure did not result

in a deprivation of custody."  *Phillips*, 2012 WL 4108113, at *12 (discussing Second Circuit

cases).   The analysis here is even *further* complicated by the fact that K.D. was nineteen years

old and legally independent at the time of the alleged seizure and interrogation.

    Since no Supreme Court or Second Circuit precedent exists that clearly establishes a right

to traditional Fourth Amendment protections during the type of in-school interview alleged here,

the Court concludes that a reasonable official would not have understood that the in-school

interview of K.D. could implicate her Fourth Amendment rights.  Thus, the Individual

Defendants are entitled to qualified immunity on K.D.'s Fourth Amendment claim.[12]  *See, e.g.*,

---

[12] Having concluded that the Individual Defendants are entitled to qualified immunity on K.D.'s Fourth Amendment claim, the Court declines to address the constitutionality of Defendants' conduct.  *See Turkmen*, 2013 WL 153158, at *21, *23 n.20 (noting that courts have discretion to decline to reach the merits of a constitutional claim when granting qualified immunity based on the lack of a clearly established right, and exercising such discretion because

*Phillips*, 2012 WL 4108113, at *29-30 (granting qualified immunity to CPS employee, village police officer and school social worker on Fourth Amendment claim for in-school interview of minor child relating to abuse investigation that was conducted without probable cause or reasonable suspicion, parental consent, a court order or exigent circumstances).  Therefore, Defendants' motion to dismiss K.D.'s implied Fourth Amendment claim is GRANTED.

## VII. Procedural Due Process

Count III asserts a cause of action for depriving Plaintiffs of their Fourteenth Amendment right to Due Process of Law based on Defendants' failure to follow the mandated reporting protocols for suspected child abuse set forth by the OCFS.[13]  *Id.* ¶¶ 30, 39, 45, 54, Ex. B.  The parties have also addressed the viability of Plaintiffs' procedural due process claim for interviewing K.D. without parental consent.  With respect to the latter claim, which the Court will examine first,  Plaintiffs argue that Defendants' conduct violated Duncan's "constitutionally protected liberty interest in the care, custody and management of [K.D.]," as well as Plaintiffs' fundamental right to remain together as a family.[14]  Pls.' Mem. 6.

---

of the lack of guidance from the Second Circuit and Supreme Court, and the "Supreme Court's admonition . . . that lower courts should 'think hard, and then think hard again' before unnecessarily deciding the merits of a constitutional issue." (quoting *Camreta v. Greene*, 131 S. Ct. 2020, 2032 (2011))).

[13] Under New York State Law certain persons, by virtue of their professions, "are required to report or cause a report to made [to Child Protective Services ("CPS")] when they have reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child."  N.Y. Soc. Servs. Law § 413(1)(a) (McKinney's 2012).  Such individuals, known as "Mandated Reporters," include school officials, such as "school teacher[s], school guidance counselor[s], school psychologist[s], school social worker[s], school nurse[s], school administrator[s] or other school personnel required to hold a teaching or administrative license or certificate." *Id.*

[14] In opposing the instant motion, Plaintiffs also argue that if Defendants believed K.D.'s accusation against her brother presented an emergency situation such that no pre-interview process could be provided, Duncan was entitled to a post-deprivation hearing.  Pls.' Mem. 7.  There are no factual allegations relating to a due process violation based on the absence of a post-deprivation hearing in the Complaint, and Plaintiffs cannot properly assert such a claim for the first time in opposition to Defendants' motion to dismiss.  *Tomlins*, 812 F. Supp. 2d at 363 n.9; *see supra* note 8.  Furthermore, the case law cited by Plaintiff is inapposite and does not support Plaintiffs' contention that a post-deprivation hearing is required after the type of in-school interview alleged in this case.  *See Shapiro v.*

A.  **Legal Standard**

Courts "examine procedural due process questions in two steps:  the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted).  As a threshold matter, the Court must therefore determine whether the interview of K.D. without parental consent infringed Duncan's right to the "care, custody and management" of K.D., or Plaintiffs' right to remain together as a family, such that they can argue that process was due to them either before or after the interview.  *See Rodriguez v. McLoughlin*, 214 F.3d 328, 337, 341 (2d Cir. 2000).

"'Choices about marriage, family life, and the upbringing of children are among associational rights [the Supreme] Court has long ranked as 'of basic importance in our society,' . . . rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard or disrespect."  *Tenenbaum*, 193 F.3d at 593 (quoting *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996)).  The Supreme Court has recognized that parents have a "constitutionally protected liberty interest in the care, custody, and management of their children,"[15] *id.* (collecting cases),

---

*Kronfeld*, No. 00 Civ. 6286 (RWS), 2004 WL 2698889, at *13-15 (S.D.N.Y. Nov.  24, 2004) (holding that five-day delay in post-deprivation hearing, including a weekend, did not violate due process where emergency removal of children from mother's custody was justified, and the children were placed in custody of their father during the five-day period of removal).

[15] Second Circuit and Supreme Court precedent recognizing a parent's liberty interest in "the companionship, care, custody and management of his or her children," is limited to cases where the parents or legal guardians of *minor* children were seeking to protect "their right to decide matters of child custody and family living arrangements," *Pizzuto v. Cnty. of Nassau*, 240 F. Supp. 2d 203, 209-10 (E.D.N.Y. 2002) (collecting Supreme Court and Second Circuit case law), or to direct the medical care of their minor children.  *Phillips*, 2012 WL 4108113, at *20.  The Second Circuit has only addressed the constitutional protection afforded to the relationship between parents and an adult child *once*, in a case that is not pertinent to the claims asserted in this case.  *See Patel v. Searles*, 305 F.3d 130, 133, 135-36 (2d Cir. 2002) (recognizing a right to familial association protected by the Fourteenth Amendment but declining to define exact boundaries or contours of the right); *see also Pizzuto*, 240 F. Supp. 2d at 212-13 (holding that *Patel* was inapplicable to a claim for interference with parents' right to the companionship and care of an

and the Second Circuit has noted that "'[c]hildren have a parallel constitutionally protected liberty interest in not being dislocated from the emotional attachments that derive from the intimacy of daily family association.'" *Southerland*, 680 F.3d at 142 (quoting *Kia P.*, 235 F.3d at 759).

As a general rule, procedural due process requires a hearing prior to depriving a parent of the care, custody or management of their children without their consent, *id.* at 149 (quoting *Nicholson v. Scoppetta*, 344 F.3d 154, 171 (2d Cir. 2003)), or a prompt post-deprivation hearing if the child is removed under emergency circumstances, *Shapiro*, 2004 WL 2698889, at *12 (citing *Velez v. Reynolds*, 325 F. Supp. 2d 293, 303 (S.D.N.Y. 2004)), or where the deprivation occurs at a time when the child is already in the custody of the State. *Kia P.*, 235 F.3d at 760 (citing *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 520 (2d Cir. 1996)).

---

independent, adult son who was murdered by corrections officers while incarcerated, because plaintiffs did not allege "intentional and direct government interference with family relationships").

As noted above, *supra* note 10, the parties address Plaintiffs' constitutional claims solely under the legal framework applicable to claims arising out of the custodial relationship between parents and *minor* children, and thus did not present any arguments concerning the existence and/or scope of the right to familial association between a parent and an adult child like K.D. Further, Defendants did not move to dismiss Plaintiffs' claims on the basis of K.D.'s legal status as an independent adult. Therefore, *solely for purposes of this motion*, the Court has *assumed without deciding* that Plaintiffs' procedural and substantive due process claims would fall within the scope of the recognized liberty interest relating to the care, custody and management of a *minor* child. *But cf. McCurdy v. Dodd*, 352 F.3d 820, 826, 829 (3d Cir. 2003) (declining to "extend the liberty interests of parents into the amorphous and open-ended area of a child's adulthood," and noting that "childhood and adulthood are markedly distinct, thus requiring different constitutional treatment in this context." (citing *Butera v. District of Columbia*, 235 F.3d 637, 655-56 (D.C. Cir. 2011))); *see also Deskovic v. City of Peekskill*, Nos. 07 Civ. 8150 (KMK), 07 Civ. 9488 (KMK),-- - F. Supp. 2d ----, 2012 WL 4435316, at *19-20, *21-23 (S.D.N.Y. Sept. 25, 2012) (discussing the uncertainty as to the scope of the right to familial association recognized in *Patel*, and holding that defendant was entitled to qualified immunity on parent's claim that her right to familial association was violated by defendant who subjected her *minor* child to an eight-hour polygraph examination without notifying her of the interrogation, because the parent had not alleged that defendant *intentionally* interfered with the family relationship).

**B. Discussion**

**1. Interview of K.D. without Parental Consent**

In light of the Second Circuit case law holding that the liberty interest in the care, custody and management of a minor child is implicated by removal of the child from the custody of the parents, district courts in this Circuit have repeatedly dismissed procedural due process claims where there is no allegation that the parents were ever deprived of custody over their children. *See Phillips*, 2012 WL 4108113, at *19-20 (collecting cases); *see also supra* note 15.  "[O]utside of removal or the compulsory provision of medical care, the Second Circuit has not specified what other kinds of government action may violate a parent's protected liberty interest in the care, custody and management of his or her child in the child abuse context."  *Phillips*, 2012 WL 4108113, at *19; *see also id.* at *21.

While some lower courts have recognized that government actions other than physical removal might also implicate the liberty interests of parents, *see, e.g.*, *Graham v. City of New York*, 869 F. Supp. 2d 337, 349 (E.D.N.Y. 2012) (noting that "[g]overnment actions other than removal may also implicate important rights," and concluding that temporary orders of protection that forbade a father from having any contact with his son for more than a year and significantly limited their contact for several years implicated the father's "vital rights as a parent."), Plaintiffs cite to no authority, either within or without the Second Circuit, to support their position that the type of in-school interview alleged in this case violates either the parent's or the child's rights to procedural due process, even where the child who is interviewed *is a minor*.

To the contrary, at least two other district courts in this Circuit have dismissed procedural due process claims based on the in-school interview of a *minor* child without parental consent in

connection with an abuse investigation, because there is no legal authority to support the conclusion that such an interview violates the parents' liberty interest.  *See Phillips*, 2012 WL 4108113, at *21 (dismissing procedural due process claim brought by parents of five-year-old child interviewed by CPS employee and police officer in presence of school social worker, without parental notice or consent, after CPS received a report of possible abuse); *see also Cornigans v. Mark Country Day Sch.*, No. 03 Civ. 1414 (DLI) (WDW), 2006 WL 3950335, at *6 (E.D.N.Y. July 12, 2006) (dismissing claim brought by parents of five-year-old child who was interviewed at school concerning abuse investigation three separate times, by school officials, a CPS caseworker and a police officer, without parental notice or consent), *adopted as modified in part by J.C. v. Mark Country Day Sch.*, 2007 U.S. Dist. LEXIS 4716 (E.D.N.Y. Jan. 23, 2007).  Since there is no legal authority to support Plaintiffs' procedural due process claim for the interview of K.D. without parental consent, Defendants' motion to dismiss Plaintiffs' procedural due process claim on this ground is GRANTED.

### 2.   Failure to Comply with New York State Law

In Count II of the Complaint, Plaintiffs assert a procedural due process claim based on Defendants' failure to comply with New York State Law requiring school officials to report suspected abuse to the OCFS.  Compl. ¶¶ 30-31, 39, 45, 52-55; *see supra* note 13.  This claim fails on the merits for two clear reasons.  First, as Plaintiffs concede in their opposition papers, the provisions of New York State law relating to the required reporting of child abuse to the OCFS do not apply to K.D., because she was nineteen years old at the time of the interview. Pls.' Mem. 5; *see* N.Y. Soc. Servs. Law § 412(1), (2) (McKinney's 2012) (defining "abused child" and "maltreated child" to mean a child under the age of eighteen years); *see also* N.Y. COMP. CODES R. & REGS. tit. 18, § 432.1(a), (b) (2012) (same).

Second, even assuming arguendo that the mandatory reporting requirements did apply to K.D., Plaintiffs offer no legal authority to support their assertion that Defendants failure to comply with those requirements violated their procedural due process rights. *See Graham*, 869 F. Supp. 2d at 351 ("'[M]ere failure to meet local or professional standards' or 'a faulty [child abuse] investigation does not necessarily rise to the level of an unconstitutional investigation.'" (quoting *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 106 (2d Cir. 1999))); *see also Love v. Riverhead Cent. Sch. Dist.*, 823 F. Supp. 2d 193, 199-200 (E.D.N.Y. 2011) (holding that defendants failure to comply with a school policy requiring parental notice for drug searches of students did not, standing alone, amount to a constitutional violation). Therefore, Defendants' motion to dismiss the procedural due process claim based on Defendants' failure to comply with the OCFS reporting protocols set forth in Count II is also GRANTED.

## VIII. Substantive Due Process

Defendants have also moved to dismiss Duncan's substantive due process claim for a deprivation of her "familial rights" based on Defendants' failure to notify her or obtain her consent prior to interviewing K.D.[16] The Second Circuit has recognized that families have, "in general terms, a substantive right under the Due Process Clause 'to remain together without the coercive interference of the awesome power of the state.'"[17] *Tenenbaum*, 193 F.3d at 600 (quoting *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977)). Thus, government conduct that infringes on the right to family integrity may also give rise to a substantive due process

---

[16] As with K.D.'s Fourth Amendment claim, there is no independent cause of action for a violation of Duncan's substantive due process rights; however, there are allegations in the Complaint concerning an allegation deprivation of Duncan's "familial rights" based on the interview of K.D. without prior notice to or consent from Duncan, and the parties address the viability of a substantive due process claim in their motion papers.

[17] *See* supra notes 10, 15.

27

claim on behalf of the parents.[18]  *Southerland*, 680 F.3d at 142, 152.  In the child removal and child abuse investigation context, the Second Circuit has repeatedly emphasized that the parents' liberty interest is counterbalanced by the "compelling governmental interest in the protection of minor children . . . ."  *Id.* at 152 (quoting *Wilkinson*, 182 F.3d at 104); *see also Tenenbaum*, 193 F.3d at 595 ("When child abuse is asserted, the child's welfare predominates over other interests of her parents and the State.").

The substantive component of Duncan's due process claim asks whether Defendants' conduct was so arbitrary, conscience shocking or oppressive in a constitutional sense, that it would have been prohibited by the Constitution even if she had been given all of the procedural protections to which she was entitled.  *Southerland*, 680 F.3d at 142, 151-52 (citations omitted). "Conduct that is merely 'incorrect or ill-advised' is insufficient to state a claim. . . . . '[o]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense,' and can thus be deemed unconstitutional."  *Phillips*, 2012 WL 4108113, at *23 (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) (internal citations omitted).

In *Cox v. Warwick Valley Central School District*, where a thirteen-year-old boy was ordered to undergo a psychiatric evaluation but was not removed from his parents' custody, after a school official made a report of suspected abuse to the Department of Child and Family Services, the Second Circuit dismissed the parents' substantive due process claim and held that

---

[18] To the extent that Plaintiffs' Complaint can be read as bringing a substantive due process claim on behalf of both Duncan and K.D., substantive due process analysis is inappropriate with respect to K.D.'s claim for the alleged seizure and interrogation without parental consent or notification, because K.D.'s claim is cognizable as a Fourth Amendment claim and therefore must be analyzed under the law applicable to claims under the Fourth Amendment. *See Tenenbaum*, 193 F.3d at 599-600 (citations omitted); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C.J.) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))).

"[w]here there is no actual loss of custody, no substantive due process claim can lie."  654 F.3d at 276 (citations omitted); *see also Southerland*, 680 F.3d at 153-54 ("Where the 'brief-removal doctrine' applies, a plaintiff does not have a cause of action for a substantive due process violation in the first place." (citing *Kia P.*, 235 F.3d at 759)); *see also Estiverne v. Esernio-Jenssen*, 833 F. Supp. 2d 356, 372 (E.D.N.Y.  2011) (noting that the principle that brief removals of a child from a parent's home during a child abuse investigation generally will not rise to the level of a substantive due process violation, which was applied by the Second Circuit in numerous cases prior to *Cox*, "applies to an even greater degree when the brief separation is relatively non-disruptive to the child/parent relationship." (citing *Joyner ex rel. Lowry v. Dumpson*, 712 F.2d 770, 778 (2d Cir 1983))).

While Plaintiffs argue that Defendants conduct was conscience shocking because of K.D.'s developmental disability, they cite to no legal authority supporting a conclusion that K.D.'s status as a developmentally disabled adult renders this type of in-school interview "outrageous" or "conscience shocking" in a constitutional sense.  Pls.' Mem. 8, 13.  Nor do they even endeavor to distinguish Duncan's claim from the claims brought by the parents of minor children subjected to similar in-school interviews that have been dismissed as insufficiently shocking to state a substantive due process claim.  *See Phillips*, 2012 WL 4108113, at *24 (citing *Cox*, 654 F.3d at 275-76); *Cornigans*, 2006 WL 3950335, at *6-7 ("Even viewing the interview without notice as a separation, such a 'temporary separation . . . in an effort to obtain assurance that [a child has] not been abused' is not 'the shocking, arbitrary, egregious' conduct that substantive due process prohibits." (quoting *Tenenbaum*, 193 F.3d at 600)); *see also, e.g.*, *Tenenbaum*, 193 F.3d at 600-01 (holding that removal of five-year-old child from school for examination by pediatrician and gynecologist for signs of possible sexual abuse without parental

consent was a "temporary separation . . . [that] did not result in the [parents'] wholesale relinquishment of their right to raise [their child]," and thus "[t]he interference was not severe enough to constitute a violation of their substantive due-process rights.").

Even assuming arguendo that K.D.'s developmental disability rendered her identical to a very young child, and that Duncan has the same substantive liberty interest in the care, custody and management of K.D. as do the parents of minor children, the allegations in the Complaint do not come close to stating a violation of Duncan's substantive due process rights.  Therefore, Defendants' Motion to Dismiss Duncan's substantive due process claim is GRANTED.

## IX. State Law Claims

Where, as here, all federal law claims are eliminated before trial, the "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state law claims.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having dismissed all federal claims asserted in the Complaint, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.  28 U.S.C. § 1367(c)(3).  Therefore, Plaintiffs' claims for gross negligence and intentional and negligent infliction of emotional distress (Count V), respondeat superior (Count VI), prima facie tort (Count VII), and negligent hiring and supervision (Count VIII) are DISMISSED without prejudice.

## X. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss is GRANTED.  The

Clerk of the Court is respectfully directed to terminate this motion, Doc. 8, and to close this case.


It is SO ORDERED.


Dated:      February 4, 2013
            White Plains, New York


Edgardo Ramos, U.S.D.J.